THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANNY CAMPBELL, Defendant-Appellant.

First District (1st Division)   No. 1—92—2784

Opinion filed August 23, 1993.

Philip Krasny and John Alioto, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michelle Katz, and Sang Won Shim, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant appeals his convictions, after a bench trial, of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)), armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)), and aggravated kidnapping (Ill. Rev. Stat. 1985, ch. 38, par. 10—2(a)(3)).

The State's principal witness was the victim, who testified that at about 7 p.m. on March 12, 1988, she was walking west on Briar Street near Broadway in Chicago, toward her home. As she walked, she saw a man, whom she later identified as defendant, walking about a quarter of a block ahead of her. The man paused under a street lamp. Becoming "uncomfortable," the victim stopped as the man walked out of view. She hurried to her apartment building and entered the first of two sets of doors, into a vestibule lighted by an overhead lamp. As she took off her gloves, she heard footsteps. The door opened behind her, and she turned around to see defendant standing in the vestibule, pointing a small, yellow, metal gun at her.

Defendant demanded the victim's wallet. Although the victim tried to engage defendant in conversation, he ordered her to accom-

pany him outside. The area outside the apartment building is lighted by an alley light, which is located 10 to 15 feet west of the walkway in front of the building. Defendant led the victim east on Briar, walking beside her, with the gun held to her side. They walked about a half block, with conversation continuing. They stopped in front of another apartment building, and defendant led the victim down a gangway to the back of the building, where they descended a flight of stairs into the basement stairwell, which was lighted by a dim bulb and by a light in the alley.

There, defendant forced the victim alternately to perform fellatio and to engage in vaginal intercourse with him. The victim looked at defendant as much as she could to gain a solid impression of him, and she continued to engage the defendant in conversation. Eventually, defendant fled the scene, leaving the victim in the stairwell.

After waiting a few minutes, the victim left the stairwell and cautiously returned to her apartment building. She went to a neighbor's apartment, from where she called police. When police arrived, she led them to the stairwell where the rape had occurred. She also described her assailant for police as a white male, 20 to 25 years old, about 5 feet 9 inches tall, weighing 145 to 160 pounds, "clean-cut" with blond hair and a moustache. She also described his clothing, noting in particular his blue underwear and white Puma tennis shoes.

Two years passed without an arrest. However, on May 17, 1990, as the victim was walking along a street near her home, a man approached her and asked her what time it was. She looked up and immediately recognized defendant. She walked away, keeping her eye on defendant. She went to a pay phone and called her boyfriend, who told her to call police. While she waited for police to arrive she watched defendant, who stayed in the area by a bus stop, continuing to ask women the time. The police arrived and arrested defendant.

The State also presented stipulated testimony from the investigating and arresting police officers, as well as from the victim's neighbor, which corroborated the time-frame and descriptive details testified to by the victim.

Defendant presented an alibi defense. According to his mother, defendant was with her at the time of the crime. On that day, Mrs. Campbell was looking at cars in Arlington Heights, Illinois, an hour to an hour and a half in distance from the crime scene. Although the car dealership closed at around 6 p.m., Mrs. Campbell stated that she and defendant went to dinner on the way home. Defendant lives with his mother just a few blocks from where the rape occurred. Thus, it was not possible for defendant to be on Briar Street at the time of the

crime. Moreover, according to Mrs. Campbell, defendant never wore underwear. She bought all of his clothes, and he never owned a pair of white tennis shoes.

Peter Pane, a salesman at the Ford dealership in Arlington Heights, corroborated Mrs. Campbell's testimony up to the time when the dealership closed. In addition, contrary to the victim, Pane recalled defendant's appearance to be "hippyish" rather than "clean-cut."

The trial court found defendant guilty and sentenced him to a 12-year prison term.

■ Defendant asserts that because his identification by the victim was unreliable and because the State failed to refute his alibi defense it did not prove him guilty beyond a reasonable doubt. Defendant urges this court to apply the five-factor analysis established by the United States Supreme Court in *Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375, and *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243, and adopted by the Illinois Supreme Court in *People v. Cohoon* (1990), 104 Ill. 2d 295, 300, 472 N.E.2d 403, to determine the reliability of the victim's testimony in this case.

Defendant's reliance on these cases is misplaced because the principle for which they stand is inapposite here. Indeed, they stand solely for the proposition that in the face of overly suggestive pretrial identification procedures employed by police, any in-court identification by a witness, in order to be *admissible*, must possess certain indicia—the five factors—of reliability independent of the tainted pretrial procedures. (*Manson*, 432 U.S. at 112-13, 53 L. Ed. 2d at 152-53, 97 S. Ct. at 2251-52; *Cohoon*, 104 Ill. 2d at 298-301.) Reliability of a witness' identification testimony, once properly admitted into evidence, is not in any way the concern of *Manson* and its progeny.

In this case, there were no pretrial identification procedures at all, let alone any that would call into question the admissibility of the victim's identification testimony. The victim saw defendant on the street on May 17, 1990. She called police, who came and arrested him. Under these circumstances, the victim's identification of defendant is simply evidence to be weighed, like any other, by the trier of fact. (*People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317.) That the trial judge believed the victim instead of defendant's witnesses is irrelevant. A trial judge is not required to believe even unrefuted alibi testimony. *Slim*, 127 Ill. 2d at 315; *People v. Berland* (1978), 74 Ill. 2d 286, 307, 385 N.E.2d 649, *cert. denied sub nom. Wolf v. Illinois* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 63.

■ Therefore, the only question in this case is whether the State proved defendant guilty of the crimes charged beyond a reasonable doubt. In so doing this court must ascertain whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

This case pits the testimony of a lone victim against a defendant. The State presented no evidence linking defendant with the crime other than the victim's identification testimony. As defendant points out, the victim's description of the assailant's hair length is at odds with his appearance in pictures taken both a month prior to and two months after the incident, as well as at the time of his arrest. However, in other respects, the victim's description to police fits the defendant's appearance to a tee. She stated that her assailant was 20 to 25 years old, about 5 feet 9 inches tall, weighing between 145 to 160 pounds. The record reveals that at the time he was arrested, defendant stood 5 feet 10 inches tall and weighed 165 pounds. At the time of the crime he was 23 years old. The victim also described her assailant as wearing a moustache, which is consistent with the defendant's appearance at the time of the crime. For his part, defendant presented the alibi testimony of his mother and of Peter Pane, who both testified that defendant was at an Arlington Heights car dealership at the time of the crime.

As a reviewing court, we lack the trial judge's advantage of observing the appearance and demeanor of the witnesses as they testified. It is for precisely this reason that this court lacks the authority to reweigh the trial judge's determinations on the credibility of witnesses. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) Indeed, we may overturn a conviction only if the evidence is "so unsatisfactory" and the witness' testimony "so lacking in credibility that a reasonable doubt of guilt remains." (*People v. Schott* (1991), 145 Ill. 2d 188, 206-07, 582 N.E.2d 690.) Although the substantial corroboration doctrine, overruled in *Schott*, was still in effect when the offenses in this case were committed, the testimony of even a single witness, if clear and convincing, is sufficient to support a conviction under the pre-*Schott* standard. *Schott*, 145 Ill. 2d at 206-07.

Here, the victim never wavered in her assertion that defendant was her assailant. She immediately recognized him when she saw him on the street two years later. That two years had passed since the crime does not render the victim's testimony incredible. (See, *e.g.*,

*People v. Rodgers* (1972), 53 Ill. 2d 207, 213-14, 290 N.E.2d 251 (two-year lapse).) Indeed, the victim was with the defendant for close to a half an hour on March 12, 1988. Much of this time was spent under well-lighted conditions, particularly the time spent in the vestibule of the victim's apartment building. Furthermore, the victim testified that she concentrated on the defendant's appearance at every opportunity, so that she would be able to identify him later.

The defendant quibbles over the victim's use of the term "clean-cut" to describe defendant because he had long hair and a moustache. However, as the trial judge noted, terms like "clean-cut" have no objective meaning. On the other hand, that defendant wore a moustache is an ascertainable fact, the victim's testimony to which is corroborated by photographs of the defendant taken around the time of the offense.

The length of defendant's hair is slightly more problematic because all of the photographic evidence shows it to be longer than the victim's description. However, the victim testified that on the day of the crime the defendant's hair was combed behind his ears, which may explain her inability to describe its precise length. Considering the accuracy of the rest of her description, her apparent inaccuracy regarding the length of defendant's hair is not a crucial discrepancy. (See *Slim*, 127 Ill. 2d at 302; *People v. Frisby* (1987), 160 Ill. App. 3d 19, 34, 512 N.E.2d 1337.) In fact, aside from this discrepancy, the record reveals that the victim could not have been more clear and convincing in her recall of the events that took place in March 1988.

Considering all the evidence in the present case, as we must, in a light most favorable to the prosecution, including the victim's testimony and her identification of the accused as well as the testimony of the investigating and arresting police officers and the victim's neighbor, a trier of fact could find the defendant committed the acts beyond a reasonable doubt.

■ Defendant next argues that the State's destruction of physical evidence denied him due process of law. After the rape, the victim was taken to Illinois Masonic Hospital, where a Vitullo kit was prepared. Vaginal swabs and pubic hair combings were taken from the victim and, on October 30, 1991, they were tested to detect the presence of semen. The tests were negative. Defense counsel was notified of the negative results on November 8, 1991. Prior to trial, the State successfully moved for an order to have the defendant provide pubic and head hair samples for comparison against the hair in the Vitullo kit. Between March 12 and 16, 1992, the State's Attorney's office was informed by the Chicago police crime laboratory that the Vitullo kit

was missing. The State's Attorney began a search procedure to locate the kit with the evidence and recovered property section of the police department. On April 1, 1992, the commander of this unit informed the State's Attorney office that the kit had been destroyed upon its return to the office in November 1991. Pursuant to police regulations, all inventory items in felony cases are destroyed after three years unless the State's Attorney sends a letter requesting that the evidence be preserved for trial. Defendant filed a motion to dismiss the information based on the State's failure to preserve the Vitullo kit. The trial court denied the motion.

Citing *California v. Trombetta* (1984), 467 U.S. 479, 81 L. Ed. 2d 413, 104 S. Ct. 2528, defendant argues that had the Vitullo kit not been destroyed, he would have had access to evidence—the pubic hair combings—which if compared to the plucked hairs, could have exonerated him. However, in *Arizona v. Youngblood* (1988), 488 U.S. 51, 58, 102 L. Ed. 2d 281, 289, 109 S. Ct. 333, 337, the Court emphasized that in cases like the present one, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process." This court has consistently followed the *Youngblood* "bad-faith" test. (*E.g., People v. Young* (1991), 220 Ill. App. 3d 488, 581 N.E.2d 241; *People v. Stallings* (1991), 211 Ill. App. 3d 1032, 570 N.E.2d 820, *appeal denied* (1991), 141 Ill. 2d 556, 580 N.E.2d 130.) We decline to depart from it now.

Here, no more can be said of the evidence remaining in the Vitullo kit prior to its destruction than that it might possibly have exculpated defendant. Under these circumstances, *Youngblood* requires defendant to show bad faith on the part of the police in the destruction of the evidence. No such showing was even attempted by defendant. Indeed, the record makes clear that police were following standard procedure in destroying the evidence. Furthermore, it strains credulity to conclude, absent evidentiary basis, that the State's Attorney would seek to have the kit destroyed in this case when he was in the process of preparing to further test its contents. Thus, the trial court properly denied the motion to dismiss.

■ Defendant's final claim is that the trial court considered evidence outside the record in determining his guilt. In ruling on defendant's motion for directed verdict, the trial court launched into an extended discussion of the intensity of alley streetlights in Chicago even though no evidence had been presented in this regard. Also, defendant assails the trial judge's statements in which he inferred that, be-

cause defendant lived in the area near the crime, he probably had the opportunity to "scout" the area of the crime.

The State argues that defendant has waived this claim because he failed to object to the trial judge's comments when made. However, defendant did include his current contention in his post-trial motion. Our supreme court has recently stressed that "application of the waiver rule is less rigid where the basis for the objection is the trial judge's conduct." (*People v. Nevitt* (1990), 135 Ill. 2d 423, 455, 553 N.E.2d 368.) Here, the trial judge uttered the allegedly objectionable comments in ruling on a motion. It is not surprising that defense counsel did not object. Indeed, given the context of the judge's remarks, objecting at the time was hardly opportune. Under the circumstances, we find good reason to relax the waiver rule.

In order for the comments by a judge to constitute reversible error, "the defendant must show that the remarks were prejudicial and that he was harmed by them." (*People v. Garcia* (1988), 169 Ill. App. 3d 618, 622, 523 N.E.2d 992, *appeal denied* (1988), 122 Ill. 2d 584, 530 N.E.2d 255.) Even assuming that the trial judge's remarks regarding the lighting in alleys and streets in Chicago were improper, they were not prejudicial to defendant. As the facts indicate, the victim had ample time to form an impression of the defendant, even in dim lighting. Furthermore, the victim made an in-court identification of defendant. The trial judge's comments regarding defendant's possible "scouting" of the crime were not improper. A finder of fact is permitted to draw any appropriate inferences from the evidence presented. (*People v. Saunders* (1990), 206 Ill. App. 3d 1008, 1013, 565 N.E.2d 183, *appeal denied* (1991), 137 Ill. 2d 670, 571 N.E.2d 154.) Here, the evidence showed that the defendant lived not far from where the incident occurred and that he had been walking in the area immediately prior to the rape. In any event, the finding of guilt here was predicated on the identification testimony of the victim and not on whether the defendant staked out the area.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.