THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY JENNINGS, Defendant-Appellant.

First District (4th Division)    No. 1—03—3207

Opinion filed June 2, 2005.—Rehearing denied July 26, 2005.

REID, P.J., specially concurring.

Michael J. Pelletier and Mary Ann MacLaughlan, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Samuel Shim, Sally Dilgart, and William M. Blythe, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Following a bench trial, defendant Larry Jennings was convicted of possession with intent to deliver cocaine and heroin and sentenced to concurrent terms of seven and four years in prison. Defendant appeals from both his convictions and sentences, contending that the State's evidence was insufficient to support his convictions, that the trial court relied on improper evidence in finding him guilty, that his sentencing hearing was improper, and that the compulsory extraction and storage of his DNA, pursuant to section 5—4—3(a) of the Unified Code of Corrections (730 ILCS 5/5—4—3 (West 2002)), was unconstitutional. For the reasons that follow, we affirm in part and reverse in part.

At trial, Chicago police officer Trevor Stotts testified that on July 10, 2002, at approximately 5:08 p.m., he and Officers Roman and Creed responded to a call of domestic violence at the Robert Taylor homes. As he entered the building, Stotts observed defendant standing with another man approximately 40 feet away. Defendant handed the other individual a small object and accepted an unknown amount of United States currency in exchange. Stotts and the other officer approached and defendant and the other individual fled up the north stairwell. Stotts pursued them as Officer Roman ascended the central stairwell. While he gave chase, Stotts observed defendant drop a small plastic bag. Stotts recovered the bag and continued his pursuit.

Officer Roman intercepted defendant on the sixth floor and placed him in custody. Officer Stotts conducted a search of defendant's person and recovered a bag containing six smaller plastic bags of a substance Stotts believed to be cocaine. The bag Stotts had recovered in the stairwell contained 25 smaller plastic bags of suspected heroin. A search subsequent to processing yielded $705 in cash.

Officer Stotts stated that he inventoried the bag containing the 25 smaller packets of suspected heroin under number 2734281 and the bag containing the 6 smaller packets of suspected cocaine under number 2734282. He thereafter placed the suspected contraband in heat-sealed evidence envelopes, placed them in a vault, and had them sent to the state crime lab for analysis.

The parties then stipulated that Officer Stotts would proffer the above testimony as to his handling of the suspected controlled substances and that Dorothy Kernan, a forensic scientist with the Illinois State Police crime lab, would testify that she received the items under the aforementioned inventory numbers in their respective envelopes, which did not exhibit any signs of tampering. Kernan opened the envelopes, removed the enclosed items, and performed tests commonly accepted in the scientific community for ascertaining the presence of controlled substances. Kernan tested all six items contained in envelope number 2734282, which had a total weight of 1.1 grams and tested positive for the presence of cocaine. She tested one of the items contained in envelope number 2734281 and found that it tested positive for the presence of heroin. The total weight of the 25 items contained in envelope number 2734281 was 3.7 grams. Kernan would have further testified that her opinions were based upon a reasonable degree of scientific certainty and that the equipment and instruments she used in testing the items were in proper working order and were certified and calibrated.

Following closing arguments, the trial court found defendant guilty of possession with intent to deliver more than 1 gram but less than 15

grams of cocaine, in violation of section 401(c)(2) of the Controlled Substances Act (720 ILCS 570/401(c)(2) (West 2002)), and possession with intent to deliver less than 10 grams of heroin, in violation of section 401(d) (720 ILCS 570/401(d) (West 2002)). Defense counsel initially requested a presentence investigation report and a hearing date. Following an off-record conversation between the court and counsel, the judge had the following colloquy with defendant:

"THE COURT: Mr. Jennings, do you understand what a presentence investigation is, sir?

THE DEFENDANT: Yes, sir.

THE COURT: And that's your decision to give that up?

THE DEFENDANT: Yes, sir."

The sentencing hearing ensued immediately thereafter. In aggravation, the State presented evidence of defendant's five prior felony convictions. In mitigation, defense counsel stated that at the time of his arrest, defendant had been out of prison for two years, was married and employed, and had been doing volunteer work since his release. Defendant stated to the court that he had "just got caught up in the wrong place at the wrong time" and that he "just so happen[ed] to be there."

The court then remarked that "the amount you are credited with having on your person is certainly much more than a person would have for their [sic] own individual use. *** It's possession with intent, and you certainly fit that any time you have that much." The judge went on to state that defendant was eligible for sentencing as a Class X offender and that his comments to the court were "pretty insulting" and that sentencing should be continued because the judge was "subject to drop a hammer on you [defendant] more so than if I [the judge] calm[ed] down." The judge remarked that he "might be inclined to be a little more unfair with Mr. Jennings than [he] would ordinarily be" and that it would be in defendant's best interest to let the judge "just cool out."

At a subsequent hearing, defendant apologized to the court for his previous comments. The court then sentenced defendant as a Class X offender to seven years in prison for possession of cocaine with intent to deliver and a concurrent term of four years in prison for possession of heroin with intent to deliver and ordered that defendant submit to DNA analysis. Defendant thereafter filed a motion for new trial, which the circuit court denied. This appeal followed.

Although defendant's initial argument on appeal concerns the propriety of his sentencing hearing, we deal first with the validity of his convictions.

Defendant challenges the sufficiency of the evidence to sustain his

convictions for possession of controlled substances with intent to deliver by contending that the State failed to establish a sufficient chain of custody over the suspected contraband, that the State failed to provide an adequate foundation for Kernan's stipulated expert testimony, and that the State failed to prove intent to deliver beyond a reasonable doubt.

In assessing the sufficiency of the evidence to sustain a defendant's conviction, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). We may not substitute our judgment for that of the trial court and will not reverse a conviction unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Lundy*, 334 Ill. App. 3d 819, 825 (2002). In order to sustain a conviction for possession of a controlled substance with intent to deliver, the State's evidence must show beyond a reasonable doubt that: (1) the defendant knew drugs were present; (2) the defendant was in immediate possession or control of the drugs; and (3) the defendant intended to deliver them. *People v. Robinson*, 167 Ill. 2d 397, 407 (1995).

Defendant first contends that his convictions should be reversed because the State failed to establish a sufficient chain of custody to connect the substances recovered from the scene of his arrest to the items found by Kernan to be cocaine and heroin. He argues that the State failed to present any evidence as to the handling and safekeeping while in the police's possession, the circumstances under which the lab received the items, or the safekeeping of the bags while they were at the lab. Defendant relies on this court's decision in *People v. Cowans*, 336 Ill. App. 3d 173 (2002), where another panel held that the State is required to demonstrate that evidence has not been altered or substituted by showing that the police took reasonable protective measures to ensure that the substances taken from defendant were the same ones later tested by chemists and that any failure to establish such a connection renders the evidence insufficient to prove the defendant guilty beyond a reasonable doubt. *Cowans*, 336 Ill. App. 3d at 177-82.

The State responds that defendant has waived this issue for purposes of appeal by failing to object to the admission of the evidence at trial and failing to incorporate the objection into a posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant counters, pursuant to *Cowans*, that his argument cannot be waived because it is a challenge to the sufficiency of the evidence, not its admissibility. *Cowans*, 336 Ill. App. 3d at 175-76. We disagree.

■ Our supreme court recently held that a challenge to the chain of custody of an alleged controlled substance in possession cases is considered an attack on the admissibility of the evidence rather than an attack on its sufficiency to uphold a conviction, and is thus subject to the ordinary rules of waiver. *People v. Woods*, 214 Ill. 2d 455 (2005). The court reasoned that the chain of custody over a purported controlled substance establishes a foundation for such evidence as reliable and admissible; it does not function as proof of the existence of an element of the crime of possession of a controlled substance. Therefore, a defendant's challenge to the State's chain of custody does not function as a challenge to the sufficiency of the evidence to support a conviction and is therefore not exempt from waiver. *Woods*, 214 Ill. 2d at 470.

■ In this case, the trial court heard Officer Stotts' unchallenged testimony that he inventoried and sealed the suspected narcotics and placed them in a vault to await delivery to the crime lab. Defendant stipulated to that testimony as well as to Kernan's statement that she received the items under the same inventory numbers in a sealed condition and that they did not exhibit any signs of tampering. In general, a defendant is precluded from attacking or otherwise contradicting any facts to which he has previously stipulated. *People v. Gibson*, 287 Ill. App. 3d 878, 880 (1997). In narcotics cases, stipulations may remove from the case any issues as to the chain of custody of any incriminating evidence. *People v. Hill*, 345 Ill. App. 3d 620, 631 (2003).

Moreover, by stipulating to the fact that evidence was in the same condition and under the proper inventory numbers, and then objecting only on appeal, defendant may have injected error into the trial. By consenting to the admission of the stipulated testimony, defendant agreed to proceed in one direction and cannot now object to its admission for the first time. Active participation in the direction of proceedings goes beyond mere waiver. *People v. Besz*, 345 Ill. App. 3d 50, 57 (2003); *Hill*, 345 Ill. App. 3d at 633. By conceding the proposition that the same items inventoried and stored by Officer Stotts were the same ones received and examined by Kernan, and that they showed no evidence of tampering or alteration, defendant is now estopped from arguing that there was insufficient evidence to establish a sufficient chain of custody over the narcotics he was accused of possessing. See *Besz*, 345 Ill. App. 3d at 58; *Woods*, 214 Ill. 2d at 471. Accordingly, we conclude that defendant has waived this issue for consideration on appeal.

■ Defendant next contends that his convictions were improper because the State failed to prove beyond a reasonable doubt that the

substances seized at the scene of his arrest were in fact controlled substances, specifically in that Kernan's stipulated testimony failed to establish her qualifications to proffer opinions as an expert witness and failed to establish that the tests she performed were carried out with appropriate due caution such that they produced reliable results. Defendant argues that the State failed to lay a proper foundation for admitting Kernan's testimony as expert opinion because it failed to present any evidence that she possessed the requisite expertise upon which to base her opinion that the items found in defendant's possession were indeed cocaine and heroin. He further argues that the State failed to present sufficient evidence to establish the reliability of the tests Kernan purportedly used to analyze the substances at issue.

Again, the State responds that defendant has waived this issue for purposes of appeal by stipulating to the admissibility of Kernan's opinion at trial and failing to object and raise the issue in a subsequent posttrial motion. We agree.

Our supreme court has recently held that, where a defendant invites and acquiesces to the admission of an analyst's opinion that an item in question tested positive for a controlled substance, without any timely objection, the defendant cannot be heard on that issue for the first time on appeal. *People v. Bush*, 214 Ill. 2d 318, 332 (2005). Relying on *People v. Jones*, 16 Ill. 2d 569 (1959), *People v. Richardson*, 123 Ill. 2d 322 (1988), and *People v. Jones*, 60 Ill. 2d 300 (1975), the court reasoned that a defendant's failure to raise a timely objection to stipulated testimony, only to allege a violation for the first time on appeal, deprives the State of the opportunity to cure any alleged defects, either by modifying the stipulation to include additional foundational support or by calling the analyst to testify in person. The court went on to state that, where a party stipulates to the admissibility of evidence, the need for the other party to lay a foundation no longer exists and that it is the stipulation by an allegedly aggrieved party, not any neglect by the opposing party, that is responsible for any resulting error. *Bush*, 214 Ill. 2d at 332-33. In accordance with the supreme court's decision, we find that defendant has waived the issue of foundation for purposes of appeal.

In addition to being waived for purposes of our consideration, defendant's contention lacks merit. He argues that the State failed to establish an adequate foundation for Kernan's stipulated testimony where it did not introduce any evidence of her qualifications to offer an expert opinion or any evidence of the reliability of the methods she had used to reach her conclusions. We do not agree. Defendant did stipulate to the following facts: that Kernan was a forensic scientist with the Illinois State Police crime lab; that Kernan performed tests

commonly accepted in the scientific community; that all of the equipment and instruments she used were in proper working order, certified, and calibrated; and that her opinions were based on a reasonable degree of scientific certainty.

While there was no explicit stipulation that Kernan was indeed qualified to testify as an expert on the presence of controlled substances, we fail to see how the stipulation that she was in fact a forensic scientist with the crime lab would not do so. Forensic scientists in crime labs routinely perform such analysis and routinely offer their opinions thereon in criminal trials. The fact that Kernan was such a professional would not qualify her to do much of anything other than these tasks. Moreover, we fail to see how the stipulations that the tests Kernan performed were commonly accepted in the scientific community, that her equipment was functioning properly, and that her opinions were based on a reasonable degree of scientific certainty would render her methodology anything other than "reliable." We highly doubt that the scientific community would accept testing methods that it did not believe were reliable, that properly functioning and calibrated instruments would produce unreliable results, or that an opinion offered by a forensic scientist and reached with a reasonable degree of scientific certainty would not be reliable. Accordingly, we reject defendant's contention that Kernan's stipulated testimony lacked an adequate foundation.

■ Defendant next contends that the State's evidence was insufficient to support his convictions and that they should be reduced to simple possession because the State failed to present adequate evidence of an intent to deliver on defendant's part. In reliance on this court's decision in *People v. Cooper*, 337 Ill. App. 3d 106 (2003), defendant argues that Officer Stotts' testimony that he saw defendant hand another individual an unidentified item in exchange for money was insufficient to demonstrate his intent to deliver the narcotics later found in his possession. He also argues that the amounts of each drug found in his possession were small enough that they could have been for his personal use and that the circumstances surrounding his arrest did not indicate an intent to distribute.

Because direct evidence of intent to deliver a controlled substance is rare, intent is commonly inferred from circumstantial evidence such as the nature, quantity, and packaging of the contraband. *People v. Neylon*, 327 Ill. App. 3d 300, 310 (2002). Other factors considered probative of an intent to deliver are a high level of purity of the recovered narcotics, the defendant's possession of weapons, large amounts of cash, drug paraphernalia, police scanners, beepers, or cellular phones, and the manner in which the substance is packaged. *Robinson*, 167 Ill. 2d at 408.

The court in *Cooper* held that the failure by the State to identify the objects the arresting officer observed defendant handing to other individuals in exchange for money rendered its evidence insufficient to demonstrate an intent to deliver the drugs later found in the defendant's possession. The court reasoned that, because the police did not seize or test the items the defendant had been seen distributing, it could not assume that those items were indeed controlled substances. *Cooper*, 337 Ill. App. 3d at 114.

The supreme court in *Bush*, in addition to rejecting subsequent challenges to the foundations for stipulated expert testimony, explicitly rejected the decision in *Cooper*. The supreme court emphasized that the standard of review on criminal convictions is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis in original)." *Bush*, 214 Ill. 2d at 326, quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Under that standard, the court stated, in reviewing all criminal cases, courts must allow all reasonable inferences from the record in favor of the prosecution. The court concluded that, on facts very similar to those elucidated in this case, the evidence easily supported an inference by the trial court that the defendant intended to deliver the cocaine found in her possession. *Bush*, 214 Ill. 2d at 326-27, 329.

Here, defendant was observed retrieving a small object from a bag and handing it to another individual in exchange for cash. A bag containing 6 individual packets of cocaine and $705 in cash were found on his person, and he was observed dropping another bag containing 25 individual packets of a suspected controlled substance. There was no other evidence of anything else found in defendant's possession. Considering that the only items found in defendant's possession at the time of his arrest were several individual packages of what was later found to be cocaine and over $700 in cash, that he at one time possessed another 25 individual packages of what was later found to be heroin, and that he did not possess anything else that he could reasonably have sold for cash, we conclude that it was not unreasonable for the trial court to infer that defendant intended to deliver the narcotics found in his possession and that the evidence adequately supported such an inference. Accordingly, we reject defendant's arguments and find that the State's evidence adequately supported his convictions for possession of controlled substances with intent to deliver.

■ Defendant's next contention is that he was denied his right to a fair trial when the circuit court improperly considered evidence outside

the record to conclude that he intended to deliver the drugs found in his possession. He argues that the trial judge arrived at guilty findings based on his own assertion that the amount of narcotics found in defendant's possession was "certainly much more than a person would have for their [*sic*] own personal use" and that this observation indicated a reliance on evidence outside the record.

We note that the remark to which defendant now objects was delivered during the sentencing phase of defendant's trial, well after the trial court had arrived at its guilty determination. It appears from the record that the court was considering the amount of controlled substances in defendant's possession only as a factor in determining the severity of the offense *vis-a-vis* sentencing and that the remarks were delivered in response to defendant's statement that he "just happened to be" at the scene of his arrest. However, defendant's theory that the remark was made in reference to the judge's inclination toward finding him guilty should not be completely disregarded.

Ordinarily, because defendant did not object to the judge's remark at the sentencing hearing or raise it as an issue in a subsequent motion, this argument would be waived for purposes of appellate review. See *Enoch*, 122 Ill. 2d at 186. However, where a claim of error involves judicial conduct, reviewing courts will relax the waiver rule. *People v. Dunn*, 326 Ill. App. 3d 281, 286 (2001). In such an instance, we review the trial court's conduct for plain error. *Dunn*, 326 Ill. App. 3d at 286. However, even if the error is plain, such an error is harmless where we can safely conclude that the trial would have produced the same result had the error not occurred. *People v. Traina*, 230 Ill. App. 3d 149, 154 (1992). For a judge's comments to constitute reversible error, the defendant must show that such remarks were prejudicial and defendant suffered harm as a result. *People v. Campbell*, 252 Ill. App. 3d 624, 631 (1993).

In a bench trial, a judge's determination based on his or her own private knowledge, that is untested by cross-examination or the rules of evidence, constitutes a denial of due process. *People v. Wallenberg*, 24 Ill. 2d 350, 354 (1962). Reversal is warranted where a defendant was not told the facts of which the court took notice, did not know the evidence upon which he was convicted, and was unable to dispute the truth of the facts on which the court relied. *People v. Smith*, 176 Ill. 2d 217, 238 (1997). Nevertheless, we will uphold a court's judgment where there is no indication that the judge considered any evidence that was not produced at trial. *People v. Nelson*, 58 Ill. 2d 61, 67-68 (1974).

Considering the record before us, as well as our previous determination that the State's evidence was sufficient to support defendant's convictions, we find that no error occurred in this case.

Defendant was entirely aware of the amount of drugs he was alleged to have possessed and was afforded the opportunity to cross-examine and refute the State's evidence. The fact that he stipulated to those amounts only further convinces us that the trial judge's comment on the subject was not erroneous. Even if the remark did constitute error, the evidence before the court was sufficient to prove that defendant possessed controlled substances with the intent to deliver them beyond a reasonable doubt, and no comments by the judge would likely have affected the guilty finding. Accordingly, we ascertain no error on the trial judge's part, and even if error had been committed in this instance, we would hold it harmless.

■ Defendant next contends that his sentence must be vacated and the cause remanded because the trial court sentenced him without conducting or considering a presentence investigation. He argues that the colloquy he had with the trial judge prior to sentencing did not constitute a valid waiver because the parties had not agreed to a specific sentence. In response, the State offers only a cursory response that defendant suffered no prejudice, that he has raised no issues in regard to his sentence, and that remand for a new sentencing hearing would be a waste of judicial resources.

Under the Unified Code of Corrections, a defendant may not be sentenced for a felony before a written presentence investigation is presented and the court considers the report. This requirement may only be waived where both parties agree to the imposition of a specific sentence and where there is a finding in the record as to the defendant's history of criminality. 730 ILCS 5/5—3—1 (West 2002). Our supreme court has held that the requirements of the statute are mandatory and that the defendant's right to a written presentence investigation report is not a personal right and cannot be waived unless both the State and the defendant agree to the imposition of a specific sentence. *People v. Youngbey*, 82 Ill. 2d 556, 561, 565 (1980). "Substantial compliance" with the statutory requirements through the inclusion in the record of information that would have appeared in such a report does not excuse the express requirement of a written report. *People v. Harris*, 105 Ill. 2d 290, 303 (1985). Waiver cannot be inferred from the defendant's failure to object at the time of sentencing. *Harris*, 105 Ill. 2d at 302. Moreover, where the prosecution and the defense do not agree to a specific sentence, the parties are without authority to waive a written presentence report, and the trial court is without authority to accept any purported waiver. *People v. Zozak*, 101 Ill. App. 3d 590, 594-95 (1981).

Here, while the record does indicate the defendant agreed to waive the presentence report requirement and that the parties agreed to his

criminal history, there is no indication that the parties agreed to the imposition of a specific sentence. That possibility may have been discussed during the off-the-record conversation, but without affirmative evidence to that effect, we cannot find that the requirement of a written presentence investigation report was properly waived in this instance. Because there is no indication from the record that the parties agreed to a specific sentence, the State and defendant were without authority to waive the written presentence investigation report requirement, and the trial court was without authority to accept their purported waiver. Accordingly, we remand this cause to the trial court with instructions to conduct a full presentence investigation and produce a written report of its findings, excepting that the State and defendant explicitly agree to the imposition of a specific sentence and to a finding of his criminal history and other facts that would be contained in a written presentence report.

■ Defendant lastly contends that the compulsory extraction of his blood and the perpetual storing of his DNA profile, pursuant to section 5—4—3 of the Unified Code of Corrections (730 ILCS 5/5—4—3 (West 2002)), violates his constitutional right to be free from unreasonable searches and seizures. He claims that the ordered extraction and analysis constitute a search conducted without the generally required individualized suspicion, that the intrusion into his bodily integrity and privacy outweighs the State's interest in law enforcement, that it does not meet a "special need" beyond aiding law enforcement, and that there is no legitimate nexus between the State's interests and extracting his DNA, as there might be in the case of a sexual or violent offender.

Section 5—4—3(a) provides that any person convicted or found guilty of any felony offense under Illinois law on or after August 22, 2002, must submit a blood, saliva, or tissue specimen to the Illinois Department of State Police for DNA analysis. 730 ILCS 5/5—4—3(a) (West 2002). The purpose of the provision is to create a database containing the genetic identity of recidivist criminal offenders. *People v. Garvin*, 349 Ill. App. 3d 845, 853 (2004), *appeal allowed*, 212 Ill. 2d 541 (2004). Since we issued the *Garvin* decision, this court has repeatedly rejected constitutional challenges to section 5—4—3. See *People v. Foster*, 354 Ill. App. 3d 564 (2004); *People v. Butler*, 354 Ill. App. 3d 57 (2004); *People v. Edwards*, 353 Ill. App. 3d 475 (2004); *People v. Smythe*, 352 Ill. App. 3d 1056 (2004), *appeal denied*, 213 Ill. 2d 573 (2005); *People v. Peppers*, 352 Ill. App. 3d 1002 (2004); *People v. Hall*, 352 Ill. App. 3d 537 (2004). We continue to adhere to the holding that section 5—4—3 is not unconstitutional and similarly reject defendant's argument in this case. Upon the imposition of sentence on remand, we

order that plaintiff must submit to DNA extraction and profiling in accordance with the statute.

For the reasons set forth above, we affirm the judgment of the circuit court as to defendant's convictions, but vacate his sentences and remand for a new sentencing hearing in accordance with our instructions.

Affirmed in part and reversed in part; cause remanded with instructions.

THEIS, J., concurs.

PRESIDING JUSTICE REID, specially concurring:

While I concur in the result of this case because of the Illinois Supreme Court's recent ruling in *People v. Bush*, 214 Ill. 2d 318 (2005), I am moved to write separately in order to draw attention to a pernicious systemic problem now built in to the system by which we prosecute, convict and sentence certain defendants in these drug cases. In 2003, I wrote for the majority in the case of *People v. Cooper*, 337 Ill. App. 3d 106 (2003). *Bush* has now rendered *Cooper* little more than a footnote in history by specifically refusing to follow it.

Both *Bush* and *Cooper* were drug cases involving very small quantities, the sentences for which were based on the defendants' alleged intent to deliver. In *Cooper*, "[i]t was stipulated by the parties that[,] if called to testify[,] a forensic chemist would [have testified] that the total estimated weight of the nine packets was 0.6 to 0.7 grams." *Cooper*, 337 Ill. App. 3d at 109. In *Bush*, the stipulated testimony would have shown that the total weight of the drugs, in that case cocaine, was less than 0.1 grams. *Bush*, 214 Ill. 2d at 322. To put that in perspective, a visit to the United States Treasury website (www.usmint.gov) revealed that a standard United States dime weighs 2.268 grams. The point is that the amount of drugs is very small. While that is not meant as an excuse or justification, it is relevant to prosecutions such as *Bush* and *Cooper* where the charge is possession of drugs *with intent to deliver*. "The quantity of a controlled substance that a defendant is charged with possessing is an essential element of the offense of possession with intent to deliver [citation] ***." *People v. Kucharski*, 346 Ill. App. 3d 655, 665 (2004), citing 720 ILCS 570/401(a)(11) (West 2000). In *Cooper* and in the case *sub judice*, the State's case hinged on the testimony of the police as it relates to the actions of an unknown, unnamed other person to the alleged drug transaction, the buyer. In *Bush*, *Cooper* and now *Jennings*, the unknown, unarrested buyer—an essential participant in any transac-

tion between a buyer and a seller—is allowed to go free. As now happens with alarming frequency, the police are present when the transaction takes place. In fact, the police allegedly watch as the entirety of the alleged sale takes place, yet do not detain both the alleged "buyer" and "seller."

I accept the following statement of the law:

> "In assessing the sufficiency of the evidence to sustain a verdict on appeal, a reviewing court's inquiry is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Under this standard, a reviewing court must allow all reasonable inferences from the record in favor of the prosecution. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). This standard applies in *all* criminal cases, regardless of the nature of the evidence. *Cunningham*, 212 Ill. 2d at 279." (Emphasis in original.) *Bush*, 214 Ill. 2d at 326.

What I do not accept is the notion that when there is a *failure of proof* we can supply the missing evidence or that only the "seller" needs to be arrested, especially in a case wherein the amount of drugs is small enough that it could have been considered consistent with an amount for personal use and the police officer's testimony is such that he or she cannot identify what items, if any, were exchanged between the defendant and the person or persons with whom he had contact. The defendants in cases such as these end up with sentences consistent with the mandatory minimum sentencing guidelines for an "intent to deliver." It raises the question of what makes the alleged buyer so special that he can be involved in a drug transaction, yet not worthy of detention or arrest. I realize I am generalizing to make my point; however, it has never been explained to me how blacks can comprise approximately 10% of the population yet comprise upwards of 90% of the drug arrests in Illinois; and how suburban youth get station adjustments and *nolle prosequi* while the urban youth do hard time.

This concurrence clearly is *obiter dicta* as it relates to Jennings, whose conviction and sentence must be affirmed in light of *Bush*. Nevertheless, I would ask my fellow judges to critically examine this system that seems equitable in the abstract yet comes down hardest on minorities. In a country founded on the notions of due process, equal protection under the law and the presumption of innocence until guilt is proven beyond a reasonable doubt, it should not be sufficient to convict a defendant such as Jennings, Cooper or Bush on a

supposition of a sale without at least detaining the buyer in the respective transactions, and upon finding the alleged purchased drugs, charging the buyer with the crime of possession of drugs. In most of these cases, the suburbanite who brought the money into the area is allowed to leave and take the drugs with him.

What we have here is a system that appears fair or just on its face, yet is quite unfair in its application. Selective arrests and prosecutions based solely on race should be declared to be a violation of both the United States and Illinois Constitutions. See *Wo v. Hopkins*, 118 U.S. 356, 30 L. Ed. 220, 6 S. Ct. 1064 (1886). " '[S]elective prosecution requires a showing that the defendant "(1) ... [was] singled out for prosecution while other violators similarly situated were not prosecuted; and (2) the decision to prosecute was based on an arbitrary classification such as race, religion, or the exercise of constitutional rights." ' " *People v. Fields*, 322 Ill. App. 3d 1029, 1032 (2001), quoting *United States v. Monsoor*, 77 F.3d 1031, 1034 (7th Cir. 1996), quoting *United States v. Cyprian*, 23 F.3d 1189, 1195 (7th Cir. 1994). However, because this issue has not been raised in the case at bar, it must be left for another day and another case.