FOURTH DIVISION

     November 20, 2003

No. 1-01-4261 

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the Circuit 

) Court of Cook County 

Plaintiff-Appellee, )

 ) 

 v. ) No. 01 C4 40296 02

) 

JAGODA BESZ, ) 

) The Honorable

Defendant-Appellant. )             Francis X. Golniewicz,

) Judge Presiding. 

JUSTICE GREIMAN delivered the opinion of the court:

Following a bench trial, defendant, Jagoda Besz, was convicted of possession of a controlled substance and sentenced to 18 months' probation.  She timely appeals from the judgment of the court below, specifically challenging the sufficiency of the evidence in this case in several respects.  First, defendant argues that the State failed to prove beyond a reasonable doubt the existence of an adequate chain of custody between the substance recovered at the apartment and that tested by the laboratory, alleging, as well, that the physical descriptions of the substance were discrepant.  Defendant further argues that the State failed to prove beyond a reasonable doubt an adequate foundation for the admission of the results of the test identifying the substance as cocaine or the testimony of the person who performed the test.  Finally, defendant argues that the State failed to prove beyond a reasonable doubt that she had constructive possession of the substance.

The following evidence was adduced at the bench trial held on November 7, 2001.  The State first called Officer Mieszala, who testified that, at approximately 2 a.m. on February 15, 2001, he and Officer Paoletti responded to a drug overdose call at 2906 74
th
 Court in Elmwood Park.  The officers were met at the door by codefendant Bart Szalaj, who told the officers that his girlfriend was "freaking out on drugs."  Szalaj led them to the basement, where defendant was sitting, semiconscious, on a bed.  The dimensions of the "cramped," one-room apartment were either "ten by ten" or "twelve by twelve." Defendant appeared to Mieszala to be under the influence of "mind-altering drugs" and was not responsive to the officers' questioning.  The paramedics arrived two minutes later and treated defendant. 

Mieszala further testified that he observed Paoletti find a plate with white powder residue on it, along with a straight razor, on the ground.  Paoletti then turned to look at the television stand and produced a clear plastic bag containing a white powder substance.  Paoletti retained the bag.    When presented with People's exhibit B, Mieszala identified it as the "clear plastic bag containing the white powder substance that Officer Paoletti found in the TV stand."  On cross-examination, Mieszala testified that there were other apartment units in the basement of the building and that he did not find any leases or utility bills in the apartment with defendant's name on them.  Mieszala also stated that he did not see defendant physically possess the substance found at the apartment.

The State next called Officer Juntunen, who testified that he also responded to the overdose call.  He observed Paoletti recover the plate and razor blade and a plastic bag, all of which Paoletti then handed to him.  He did not see from where Paoletti recovered the plastic bag.   When presented with People's exhibits C and D, Paoletti identified them as the white substance in the plastic bag and the plate, respectively.  On cross-examination, Juntunen testified that he never saw defendant in possession of any cocaine or marijuana.  

The State then called Sergeant Fagiano, who testified that he was called to the Elmwood Park police station on the night of the incident and spoke to defendant at approximately 5:30 a.m.  Defendant told him that a friend
 brought over the cocaine that night, they played video games, and eventually they did 8 to10 lines of cocaine together off a kitchen plate.  Defendant then passed out, remembering only that the paramedics had helped her.  She stated that they placed the bag containing the cocaine underneath the television stand.  The friend who brought the cocaine left the apartment at 1:30 a.m., leaving the cocaine there for defendant and Szalaj to hold.   

The parties entered the following stipulation, in relevant part: "[I]f called to testify the State would call Bradley Fleming.  He would testify that items were submitted to the Illinois State Police Forensic Science Division under laboratory case number W1001038; that the items submitted was [
sic
] 69.2 grams of a chunky substance in one baggie; that the findings were cocaine."  At that point, exhibits A, B, C, and D were admitted into evidence without objection by defendant.   

Throughout trial, the defense focused on the possession element of the crime.  Defense counsel argued that defendant did not have control over the premises where the cocaine was found and, thus, she did not have constructive possession of it.  In developing this argument, defense counsel acknowledged that the substance at issue was cocaine, but claimed that defendant only had possession of the 8 to10 lines that she ingested, rather than the "large chunk of cocaine" found in the apartment on the television stand and entered as an exhibit at trial.  Defendant moved for a directed finding on this basis, which the court denied.

At the conclusion of the trial, defendant was convicted of possession of cocaine in an amount between 15 and 100 grams, pursuant to section 402(a) of the Illinois Controlled Substances Act (720 ILCS 570/402(a) (West 2000)).  Defendant filed a motion for new trial, reiterating the argument regarding constructive possession.  Defendant argues on appeal that the evidence was insufficient to support her conviction.  We disagree and affirm her conviction for the reasons that follow.

The elements required to establish defendant's guilt of the offense of possession of a controlled substance are: (1) the identity of the substance at issue, 
i.e
., that it is a controlled substance in the proper amount; and (2) that defendant knowingly possessed that substance.  720 ILCS 570/402 (West 2000); see also 
People v. Hagberg
, 192 Ill. 2d 29, 34 (2000).  When a defendant challenges the sufficiency of the evidence, it is our task to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 261 (1985);  
Jackson v. Virginia
, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979).  Defendant argues that the State's evidence in this case was insufficient to prove either element beyond a reasonable doubt and, accordingly, asks that this court reverse her conviction.  

We begin by noting that there are two components to defendant's argument regarding the first element of the offense – the identity of the substance at issue.  First, defendant claims that the State failed to establish an adequate foundation for the admission of the results of the test identifying the substance as cocaine in the proper amount because neither the tester's qualifications nor the "evidentiary basis" for his opinion was ever established.  Second, she claims that the State failed to establish the existence of an adequate chain of custody between the substance recovered at the apartment and that tested by the laboratory, specifically asserting that the physical descriptions of the items were at variance with one another.  Defendant claims that, as a result of these alleged deficiencies, the State failed to prove beyond a reasonable doubt the element of the identity of the substance.  Thus, it is our task in this case to review the record, in the light most favorable to the prosecution, for evidence supporting the court's finding that the substance recovered from the apartment was indeed cocaine in the amount of 15 to 100 grams.  For the reasons that follow, we find that the evidence in this case was sufficient to convince the court, beyond a reasonable doubt, of this fact.  

We first address defendant's argument regarding the admission of the stipulated expert testimony, as our determination of that issue serves as a predicate for our discussion of the "chain of custody" component of defendant's argument.  Defendant claims that the stipulated testimony was admitted without "the necessary proof," citing 
People v. Raney
, 324 Ill. App. 3d 703 (2001). Specifically, defendant claims that the stipulation in this case was entered without the State having  offered evidence: (a) identifying what tests were actually performed on the subject substance; (b) indicating that the tests actually performed were of a type generally accepted and relied upon in the field; (c) showing that the equipment used to perform the test was functioning properly at the time the tests were performed; (d) explaining why the opining expert believed the results of the tests were accurate; or (e) identifying the tester's qualifications.  

In 
Raney
, the court found that the State failed to establish the proper foundation for the admission of the results from a gas chromatography mass spectrometer (GCMS) machine that was used to test the suspect substance in a drug possession case.  The 
Raney
 court found that there was no proof as to the method used to record the data provided by the GCMS machine; whether the machine was functioning properly at the time of the test; how the machine was calibrated; or why the expert knew the results were accurate.  
Raney
, 324 Ill. App. 3d at 710.  As a result, the court reversed the defendant's conviction.  
Raney
, 324 Ill. App. 3d at 711.

We find it significant, however, that
 the evidence 
contested in 
Raney
 was not entered by stipulation but, rather, by live testimony of the forensic expert who ran the test.  In addition, the defendant raised the issue at trial by contesting the expert's lack of qualifications, moving for a directed finding on the basis that an inadequate foundation had been laid for the expert's testimony, and also reiterating the issues during closing argument.  
Raney
, 324 Ill. App. 3d at 705.  Thus, the facts in 
Raney
 are 
significantly distinguishable from those before us. 

In this case, defendant not only failed to raise any argument regarding the admission of the expert testimony either at trial or in her posttrial motion, but she also took part in its offering into evidence, by agreeing to enter it through a stipulation.  Accordingly, we find that defendant has waived this issue.  See 
People v. Enoch
, 122 Ill. 2d 176, 186 (1988) (both a specific objection at trial and raising the issue in a posttrial motion are required to preserve an issue for review).  

Defendant attempts to get around the wavier rule by characterizing the challenge as an attack on the sufficiency of the evidence, rather than its admissibility.  See 
Enoch
, 122 Ill. 2d at 190 (claim as to the sufficiency of the evidence is not subject to forfeiture).  This court, however, has previously rejected this very argument in 
People v. DeLuna
, 334 Ill. App. 3d 1, 20 (2002).  

In 
DeLuna
, the court explained that an attack regarding the proper foundation for expert testimony bears on the admissibility of the evidence rather than the sufficiency.  
DeLuna
, 334 Ill. App. 3d at  20.  The court explained: 

"Arguably, sufficiency involves absence of proof of a basic element of the crime.  Defendant here is not challenging the lack of proof as to the existence of an element of the crime, since [the expert] testified to the identity of the controlled substance.  
The challenge is to the failure to lay a proper foundation for the proof of that element
.
 This goes to a determination of its admissibility, rather than sufficiency of the evidence presented
." (Emphasis added).  
DeLuna
, 334 Ill. App. 3d at 20.  

Citing 
People v. Lopez
, 242 Ill. App. 3d 160, 162 (1993), the 
DeLuna
 court further noted that  exceptions to the waiver rule are made where the allegation of error would not normally be expected to be included in a posttrial motion.  
DeLuna
, 334 Ill. App. 3d at 19-20.  Because  foundation errors would normally be expected to be included in a trial objection or posttrial motion, the court found that the defendant had waived them by his failure to raise them before his appeal.  
DeLuna
, 334 Ill. App. 3d at 19-20.  The court aptly observed that had an objection been timely made, the State could have cured the errors.  
DeLuna
, 334 Ill. App. 3d at 20.    

The 
DeLuna
 court relied on 
People v. Bynum
, 257 Ill. App. 3d 502 (1994), in making its determination.  In 
Bynum
, also a possession case, the court found that the expert's failure to testify that the machine used to test the substance at issue was a device generally relied upon by experts in her particular field and her failure to explain how the machine was calibrated or why she knew its results were accurate would have precluded the admission of her testimony at trial.  
Bynum
, 257 Ill. App. 3d at 514.  However, because the defendant did not object to the expert's testimony on the grounds of the foundation at trial but, rather, on the grounds of hearsay only, the court found that the defendant had waived the foundation argument.  
Bynum
, 257 Ill. App. 3d at 514.  The court explained:

"The rule requiring defendant to make a specific objection is particularly well suited for application when a defendant argues on appeal that the State has failed to lay the proper technical foundation for the admission of evidence.  This is so because a timely and specific objection allows the State the reasonable opportunity to correct any deficiency in the foundation proof."  
Bynum
, 257 Ill. App. 3d at 514-15.   

We find that this rule is even better suited to apply in situations, such as in the instant case, where the defendant not only failed to raise an objection during live testimony but 
actually took part in the offering of the testimony through stipulation
.  

The court's analysis in 
People v. Williams
, 200 Ill. App. 3d 503 (1990), is instructive.  In 
Williams
, also 
a possession case, the court refused to subject to any further scrutiny a stipulation as to a chemist's testimony regarding his analysis of the substance at issue.  The court found that the result of the parties' agreement to present the chemist's testimony by stipulation, in a brief and summary fashion, was to remove from the case any issue of the expert's qualifications, the chain of custody, or the weight and chemical composition of the suspect materials.  
Williams
, 200 Ill. App. 3d at 516.  The court reasoned that the State would not have agreed to the stipulated testimony, thereby foregoing the opportunity to place the chemist on the witness stand, where he could have described in detail his qualifications, findings, and tests used, "were not the stipulation intended, in part, to eliminate the need for defending his testimony against a challenge to its sufficiency."  
Williams
, 200 Ill. App. 3d at 516.    

The 
Williams
 court further noted that in reliance on the stipulation, defendant's trial counsel focused on other theories and aspects of the defense – specifically, defendant's constructive possession of the drugs.  
Williams
, 200 Ill. App. 3d at 516.  The court noted:

"Throughout the course of the trial, no question was raised concerning the evidence presented by [the expert] or its sufficiency to support any element of the charged offenses.  Nor did the defense offer any additional testimony or evidence to contradict [the expert's] statements.  In his argument for a directed finding of not guilty at the close of State's evidence, and in his closing argument, defense counsel focused almost entirely on the issue of [the defendant's] constructive possession of the drugs.  Defendant's written motion for a new trial, while containing the boilerplate language that the prosecution failed to prove his guilt beyond a reasonable doubt and to prove every material allegation in the indictment beyond a reasonable doubt, addressed with specificity only the constructive possession issue.  Outside of [the expert's] stipulated testimony, the weight and composition of the drugs are nowhere discussed."   
Williams
, 200 Ill. App. 3d at 516-17. 

Similarly, the defense counsel in the instant case focused on the issue of the defendant's constructive possession of the drugs both at trial and in his motion for new trial.  
Additionally, the weight and composition of the drugs are not discussed in this case anywhere but the stipulated testimony.  
Thus, we find that defendant in this case, much like the defendant in 
Williams
, intended to stipulate to the weight and identity of the cocaine in this case in order to develop a defense theory regarding her possession.  See also 
People v. Miller
, 218 Ill. App. 3d 668, 671-72 (1991) (the court found that the stipulated testimony of two chemists offered by the State to prove the weight and identity of seized drugs was not subject to further review by the court because it, too, was the only evidence of record concerning that element of the possession charge, the defense counsel focused on a different theory at trial, and the issue was not specifically addressed in defendant's motion for new trial
). 

We draw from the logic in 
Williams
, 
Miller
, and 
DeLuna
 in concluding that defendant should have previously raised any issue regarding foundation, had she not intended for the stipulation to be entered for the purpose of establishing the identity and weight of the drugs.  If we were to allow defendant to object to the admission of the stipulation for the first time on appeal, such would amount to our condonation of a party's attempt to inject error into the record.  See 
People v. Gacy
, 103 Ill. 2d 1, 74 (1984) (the court found that to review an issue regarding the failure to give a jury instruction limiting the use of statements, to which defendant stipulated and on which he relied as part of his defense strategy, would permit the defendant to inject error into his own case – thus, the issue was waived by defendant's failure to object at trial).  

Thus, we hold that where a defendant offers to stipulate to the admission of an expert's testimony without raising an objection as to whether the proper foundation for the testimony had been laid, then later relies on that testimony as part of his defense, the defendant may not raise the issue for the first time on appeal.

In so holding, we note that different courts have taken a different approach, yet have arrived at the same conclusion as we have in this case.  In both 
People v. Rucker
, No. 1-01-3617 (August 19, 2003), and 
People v. Washington
, No. 1-02-2919 (September 30, 2003)
, the defendants challenged the admission of stipulated expert testimony, arguing that "the State failed to '(1) identify what tests were performed; (2) indicate that any equipment used in performing the tests was functioning properly at the time of the testing; or (3) explain why the chemist knew that his results were accurate.' "  
Rucker
, slip op. at 22; 
Washington
, slip op. at 15.  Both courts found that the defendants' challenges to 
the foundation laid for the expert testimony were indeed claims attacking the sufficiency of the evidence and, thus, not subject to waiver.  
Rucker
, slip op. at 23; 
Washington
, slip op. at 14.  As such, the courts entertained the defendants' arguments, despite their failure to raise the issue at trial.  The end result was the courts' finding that the evidence was nevertheless sufficient.  Thus, we note that, though we employ a different theory to arrive at our decision in this case, the outcome is the same.

The second aspect of defendant's challenge to the sufficiency of the evidence establishing the identity of the cocaine in this case concerns the "chain of custody" of the substance at issue.  Defendant claims, first, that the State failed to establish the identity of the substance as cocaine because the physical description given of the substance taken from the apartment differed from that which was tested and, second, that the State failed to overcome this discrepancy by proving an uninterrupted chain of custody.  Again, the State argues that defendant is raising a foundational argument which was not preserved and asks that we find waiver.  Defendant, however, once more contends that she is challenging the sufficiency of the evidence in this case rather than the admissibility.  Because we find the chain of custody issue raised by defendant is entirely without merit in light of the record in this case, we need not address the parties' arguments regarding waiver. 

The record reveals that in moving for a directed finding on the element of defendant's possession of the substance at issue, defense counsel stated, "it would be my argument, Judge, that even in the light most favorable she did not possess, actually or constructively, the exhibit which is before you, which was located in the apartment where she was."  By this statement, and various others acknowledging that the plastic bag found in the apartment contained cocaine, defense counsel resolved any gaps in the chain of custody that might have been caused by a discrepancy in the description of the substance.
(footnote: 1) 

It is clear that defendant took the position at trial that the large chunk of white substance found on the television stand was the exhibit identified by the officers at trial, and that it was indeed cocaine.  Thus, as defendant conceded this ultimate fact at trial, she is now estopped from arguing that there was insufficient evidence in support of that fact.  See 
People v. Johnson
, 334 Ill. App. 3d 666, 680 (where the defense counsel conceded the ultimate issue of the identity of the controlled substance recovered as evidence in the case, the court found that defendant had forfeited the right to raise a foundation argument on appeal).  

Accordingly, we find the evidence in this case was sufficient to establish, beyond a reasonable doubt, the element concerning the identity of the substance as cocaine in the proper amount.  We look next to the evidence supporting the second element of this crime – defendant's possession of that cocaine. 

We begin by noting that it is not necessary for the State to prove actual possession, if constructive possession can be inferred.  
People v. Neylon
, 327 Ill. App. 3d 300 (2002).  Evidence that a defendant knew drugs were present and exercised control over them establishes constructive possession.  
People v. Jones
, 295 Ill. App. 3d 444, 453 (1998).  Knowledge may be shown by the evidence of conduct from which it may be inferred that the defendant knew the contraband existed in the place where it was found.  
People v. Smith
, 288 Ill. App. 3d 820, 824 (1997).  This evidence, establishing constructive possession, is often entirely circumstantial.  
People v. Minniweather
, 301 Ill. App. 3d 574, 580 (1998).  

In this case, the State introduced ample circumstantial evidence of defendant's constructive possession of the cocaine such that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Specifically, the record reveals that the defendant was found in the apartment, passed out from a drug overdose.  Drugs were found on a television stand in the same room where she was found.  The size of the room was roughly 10 to 12 feet by 10 to 12 feet.  Defendant admitted to Sergeant Fagiano that she had ingested 8 to 10 lines of cocaine off a kitchen plate, and thereafter the bag that contained the cocaine was put under the television stand.  She further explained to Fagiano that her friend had brought the cocaine over and had left it for defendant and Szalaj to hold.  

In sum, the evidence showed that defendant had knowledge of the presence of the cocaine in the place that it was found and that it was in her immediate and exclusive control, because she ingested it.  
B
ecause defendant once had physical control of the cocaine with intent to exercise control on her own behalf, and she did not abandon it and no other person obtained possession, the evidence is not so improbable or unsatisfactory as to create a reasonable doubt of her guilt.  
See 
People v. Adams
, 161 Ill. 2d 333, 345 (1994) ("Constructive possession may exist even where an individual is no longer in physical control of the drugs, provided that he once had physical control in his own behalf, and he has not abandoned them and no other person has obtained possession"). 

We note that defendant's argument, that she was a "mere visitor" to the apartment from which the cocaine was seized and, therefore, she had no "control" by which to infer that she had possession of the cocaine, has been rejected by the Illinois Supreme Court: 

"Proof that a defendant had control over the premises where the drugs were located can help resolve [the issue of possession] because it gives rise to an inference of knowledge and possession of the drugs [citation], but it is not a prerequisite for conviction.  
Indeed, not only does a defendant not need to control the premises, he does not even need to have actual, personal, present dominion over the drugs themselves
."  (Emphasis added.) 
Adams
, 161 Ill. 2d at 345.  

In this case, because defendant admitted that she had knowledge of the presence of the cocaine, her control of the apartment was not even relevant.  
Adams
, 161 Ill. 2d at 345.

We find, after reviewing the evidence in the light most favorable to the prosecution, that the evidence was sufficient to support a rational trier of fact's finding, beyond a reasonable doubt, that defendant had possession of the cocaine. 

Affirmed. 

QUINN, P.J., and THEIS, J., concur.

FOOTNOTES
1: 
Other statements made by defense counsel include the following: "What I'm trying to argue, Judge, is that there was no evidence that she ever possessed physically or actually the 69 – the large chunk of cocaine"; "So what I'm arguing is that, yes, I believe the Court has a basis to find her guilty of actual possession of eight to ten lines of cocaine off that plate, but I don't believe there was any evidence which would give the Court reason to find, beyond a reasonable doubt, that she actually possessed the large chunk or she constructively possessed the large chunk"; "The large chunk was brought by someone else, that's what you heard.  It was left by someone else, that's what you heard.  And it was under the TV, apart from where she was on the bed in her semi-conscious state; that she was not the only one in that apartment"; "Did she handle it?  Possibly.  Did she cut – or did someone cut the cocaine off of that chunk?  Probably."