NOTICE
Decision filed 11/08/19. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2019 IL App (5th) 170038-U

NO. 5-17-0038

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Fayette County. |
| | ) | |
| v. | ) | No. 15-CF-105 |
| | ) | |
| MARCUS M. CURRIE, | ) | Honorable |
| | ) | M. Don Sheafor Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justice Moore concurred in the judgment.
Justice Welch dissented.

**ORDER**

¶ 1    *Held*: The trial court did not err in finding defendant guilty beyond a reasonable doubt of unlawful possession of more than 15 grams, but less than 100 grams of cocaine. Remand is necessary, however, where the trial court failed to conduct a proper *Krankel* inquiry, when defendant made posttrial claims of ineffective assistance of counsel.

¶ 2    Following a bench trial, defendant, Marcus M. Currie, was convicted of possession of a controlled substance (cocaine) and was sentenced by the circuit court of Fayette County to six years' imprisonment with two years of mandatory supervised release. Defendant argues on appeal that the State failed to prove beyond a reasonable doubt that he knowingly possessed a controlled substance. Defendant also believes his cause should

1

be remanded to the trial court in order to address his *pro se* posttrial allegations of ineffective assistance of counsel.

¶ 3    The record reveals that in the early morning hours of June 2, 2015, defendant was driving home to Centralia after spending the day visiting his son in Decatur. According to defendant, he got stuck in a ditch off Route 51, south of Vandalia in Fayette County, after he swerved to avoid hitting a deer on the road. After about an hour, at approximately 3 a.m., two police officers, responding to a third party call, arrived to assist defendant. The officers first checked on defendant and were able to direct him back onto the roadway via a field entrance. Once the car was back on the road, the officers checked the vehicle to see if there was any damage. Because defendant was on parole, one of the officers asked defendant for permission to search the car. Defendant agreed without hesitation, telling the officers he had nothing to hide. He had already informed the officers that he had borrowed the car in order to make the drive to see his son.

¶ 4    Upon searching the vehicle, one of the investigating officers located a clear baggie of a white powdery substance in the back seat of the car behind an armrest that could be folded down. A child's car seat was placed directly in front of the partially open armrest console in such a way that had a child been sitting in the car seat, his back would be pressing against the armrest. The officer conducted a field test to confirm that the white substance was cocaine and weighed the bag. Defendant was then placed under arrest and charged with unlawful possession of a controlled substance, in that he knowingly had in his possession more than 15 grams, but less than 100 grams of cocaine, in violation of 720 ILCS 570/402(a)(2)(A), a Class 1 felony.

2

¶ 5    At the preliminary hearing, the reporting officer documented that they recovered 60 grams of cocaine from the car that defendant was driving that night.

¶ 6    The bench trial was held on January 15, 2016. Defendant's counsel stipulated to the chain of custody for the baggie of cocaine recovered from the car defendant had been driving that evening and stipulated to the photographs of the car's interior where the baggie had been located behind the armrest. At trial, the officers who responded to the call for assistance testified that when they arrived at the scene, the lights on defendant's car were off and defendant was sitting alone in the dark vehicle. In fact, one of the officers passed by the scene and had to turn around to find defendant. Both officers admitted that defendant was very cooperative, grateful for the assistance, never tried to flee from the vehicle, and never made any furtive movements. They decided to search his vehicle because defendant was on parole, and he was traveling from Decatur to Centralia. The officers also stated that defendant had told them he had no knowledge of the drugs being in the vehicle, and reminded them that he had borrowed the car. In addition to the testimony of the responding officers, Julia Edwards, with the Illinois State Police, testified that she had prepared the laboratory report indicating that 23.5 grams of cocaine were contained in the baggie found behind the armrest.[1]

---

[1]It is unclear from the record whether defense counsel was aware of the discrepancy in the reported weight of the cocaine found at the scene, as opposed to the lab report, which contained a different amount of cocaine, when he stipulated at trial to the chain of custody for the cocaine recovered from the borrowed car.

¶ 7    The trial court subsequently issued a written order finding defendant guilty of possession of a controlled substance. The court did not believe defendant was truthful when he said he swerved to miss a deer because he would not have been sitting in a car with all of its lights off. Rather the court believed defendant did not want to be seen. Additionally, the trial court relied on a photograph of the armrest showing that it could not be completely closed because of the presence of the baggie of cocaine. The court concluded that the evidence had not shown factors which created a reasonable doubt of defendant's guilt.

¶ 8    Defendant first argues on appeal that the State failed to prove beyond a reasonable doubt that he knowingly possessed the cocaine found behind the armrest in the backseat of the car he had borrowed. Defendant points out he willingly consented to the search, he did not try to flee, and the drugs were not found in plain sight. According to defendant, none of the facts support the finding that defendant knowingly possessed the cocaine.

¶ 9    To sustain a conviction for possession of a controlled substance, the State is required to prove beyond a reasonable doubt that the defendant had knowledge of the presence of narcotics and that the narcotics were in the accused's immediate and exclusive control. The knowledge element is often proven by introducing evidence of a defendant's acts, statements, or conduct from which a fact finder can infer that the defendant knew of the contraband's presence. *People v. Moore*, 2015 IL App (1st) 140051, ¶ 25.

¶ 10    Here, defendant was charged with the offense of possession of cocaine in an amount between 15 and 100 grams pursuant to section 402(a) of the Illinois Controlled Substances Act (720 ILCS 570/402(a)(2)(A) (West 2014)). The elements required to establish defendant's guilt of the offense of possession of a controlled substance are the identity of

4

the substance at issue and that defendant knowingly possessed that substance. *People v. Besz*, 345 Ill. App. 3d 50, 53 (2003). In this instance, defendant stipulated that the substance found in the vehicle was cocaine. The sole issue then became whether the State proved defendant knowingly possessed the cocaine. Given that defendant had constructive possession of the vehicle, the court, as the trier of fact, was justified in finding that defendant possessed the requisite knowledge that the cocaine was in the vehicle. Defendant was sitting in a dark, unlit vehicle off an embankment on the roadside at 3 a.m. After running off the road, rather than having flashers on or standing on the roadside trying to flag down help, defendant remained in his vehicle with all the lights off. Additionally, he was the only person in possession of the vehicle preceding discovery of the cocaine. The size of the bag of cocaine took up enough space so that the armrest console could not be placed all the way into its nook. If defendant had placed his child in the car seat earlier that day, he would have noticed his child's inability to sit all the way back against the closed armrest console. The trial court assessed the credibility of defendant's claim of innocence and was justified in finding defendant's statement that he had no knowledge of the cocaine in the backseat of the car incredible based upon the testimony of the State's witnesses regarding the placement of the drugs, the time of the incident, and the placement and physical appearance of the vehicle.

¶ 11    When the determination of a defendant's guilt or innocence depends upon the credibility of the witnesses and the weight to be given their testimony, the reviewing court must defer to the fact finder and cannot substitute its judgment for that of the trier of fact. *People v. Robinson*, 213 Ill. App. 3d 1021, 1025 (1991). The relevant question is whether,

after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Under these principles, we agree that the State presented sufficient evidence to find defendant guilty of possession of more than 15 grams but less than 100 grams of cocaine beyond a reasonable doubt.

¶ 12    Defendant further contends his cause should be remanded so that the trial court can address his *pro se* posttrial allegations of ineffective assistance of counsel. After his trial was over, defendant filed a *pro se* motion alleging that his attorney "misrepresented" defendant at trial because his counsel refused to call witnesses defendant wanted called, defense counsel refused to play defendant's videotaped statement for the court, and improperly advised defendant. Instead of conducting a hearing inquiring into defendant's posttrial allegations, the trial court chose not to rule on defendant's *pro se* motion and continued the case. After defendant filed a second *pro se* motion alleging "misrepresentation," the court discharged defense counsel and appointed the public defender to represent defendant. The public defender filed an amended posttrial motion in which he argued that trial counsel was ineffective for stipulating to the cocaine's chain of custody, that the State failed to prove defendant knowingly possessed the drugs, and that the trial court improperly shifted the burden of proof to defendant when it found him guilty. The trial court issued a written order denying defendant's amended posttrial motion. The court found that because there was no objection at trial, and because defendant did not complain about the trial strategy employed or about defense counsel at any time during the

6

trial, defendant had waived his arguments that counsel was ineffective. Because the trial court failed to conduct an inquiry into defendant's *pro se* claims of attorney misrepresentation, defendant asks us to remand the case to the trial court to determine whether it is possible that defense counsel neglected defendant's case. See *People v. Moore*, 207 Ill. 2d 68, 78 (2003). We agree.

¶ 13 Under *Krankel*, a defendant's *pro se* motion alleging the ineffective assistance of counsel requires the trial court to inquire into the factual basis of a defendant's claim and determine whether there is any merit to it. See *People v. Krankel*, 102 Ill. 2d 181 (1984). A defendant need only expressly state, either orally or in writing, that his attorney was ineffective to trigger a preliminary *Krankel* inquiry. *People v. Ayres*, 2017 IL 120071, ¶¶ 18, 24. If the inquiry reveals "possible neglect" of the case, new counsel is appointed to litigate the ineffective assistance issue, at which time a full hearing on the defendant's ineffectiveness claim is held. *Moore*, 207 Ill. 2d at 78. The purpose of the *Krankel* procedure is to fully address a defendant's *pro se* claims against counsel. *People v. Jolly*, 2014 IL 117142, ¶ 29. By addressing those claims in the trial court, the procedure is intended to potentially limit issues on appeal. *Jolly*, 2014 IL 117142, ¶ 38.

¶ 14 In this instance, defendant made two *pro se* allegations that he was misrepresented by counsel. With either one of his motions, the trial court should have conducted a preliminary *Krankel* inquiry into defendant's claims. See *Ayres*, 2017 IL 120071, ¶ 21. Although defendant did not use the exact words "ineffective assistance of counsel," he did allege that his attorney "misrepresented" him and supported those allegations with specific facts. All of this should have conveyed to the court his dissatisfaction with his attorney.

¶ 15　The State argues that *Krankel* was satisfied when the trial court appointed new counsel after defendant's motions were filed, and the new counsel raised claims of ineffective assistance of trial counsel. According to the State, defendant received the remedy contemplated by *Krankel*, and, therefore, there is no need to remand for a formal *Krankel* inquiry. Allowing trial counsel to withdraw and appointing new posttrial defense counsel, however, does not satisfy the *Krankel* procedure. See *People v. Reed*, 2018 IL App (1st) 160609, ¶ 51. The court's discussion with defendant focused on whether defendant wanted to proceed *pro se*, not his basis for his ineffectiveness claims. See *Moore*, 207 Ill. 2d at 81. More importantly, whether or not counsel inquired into a defendant's *pro se* claim of ineffective assistance is not the purpose of *Krankel*. The inquiry is not one performed by counsel, whether or not newly appointed, but rather it is for the trial court to inquire into the factual basis of the defendant's ineffectiveness allegations. Mere appointment of counsel does not automatically resolve the requirements under *Krankel*. We also note that counsel did not argue all of defendant's *pro se* allegations in his motion for a new trial. We therefore agree that this cause needs to be remanded for the appropriate *Krankel* inquiry.

¶ 16　Finally, we briefly address our dissenting colleague's belief that we are "jumping the gun" in addressing defendant's sufficiency of the evidence claim prior to remanding the case for a *Krankel* hearing. Initially, we note that this issue is unsettled among all appellate districts. Our approach in this case is consistent with *People v. Cunningham*, 2019 IL App (5th) 160097-U, and other decisions in this district. That said, this matter has not been fully briefed and the issue must await another day.

8

¶ 17    For the foregoing reasons, we remand this cause for proceedings consistent with this disposition.

¶ 18    Affirmed in part; remanded in part.

¶ 19    JUSTICE WELCH, dissenting:

¶ 20    I respectfully dissent with the majority as I do not believe the sufficiency of the evidence claim should be addressed at this point in the proceedings. I instead believe that the case should first be remanded so that the trial court can hold the required *Krankel* hearing. Only after the *Krankel* hearing, and assuming a subsequent appeal is filed, would it be appropriate for this court to rule on the merits of the sufficiency of the evidence issue. This approach is consistent with *People v. Wilson*, 2019 IL App (4th) 180214. The majority is jumping the gun in affirming on that issue.