NOTICE
Decision filed 08/05/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240558-U

NO. 5-24-0558

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Fayette County. |
| | ) | |
| v. | ) | No. 15-CF-105 |
| | ) | |
| MARCUS CURRIE, | ) | Honorable |
| | ) | Allan F. Lolie Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices Boie and Vaughan concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the trial court's denial of defendant's *Krankel* motion where there is no indication that *Krankel* counsel was ineffective for not having defendant's witnesses testify; the court was aware of the substance of their testimony and, thus, there is no reasonable likelihood that the result of the proceeding would have been different.

¶ 2     Following a bench trial, defendant, Marcus Currie, was convicted of possession of cocaine. On direct appeal, we held that the evidence was sufficient to prove his guilt beyond a reasonable doubt but remanded for the court to conduct a *Krankel* hearing on defendant's posttrial allegations that trial counsel was ineffective. *People v. Currie*, 2019 IL App (5th) 170038-U. Following remand, the trial court held a *Krankel* hearing. At that hearing, most of defendant's allegations centered on his trial counsel's failure to call certain witnesses. Defendant testified about their expected testimony, but none of the proposed witnesses testified. After the hearing, the court found

1

that the proposed testimony would not have changed the outcome of the trial and thus denied defendant's motion. Defendant appeals, contending that counsel at the *Krankel* hearing was ineffective for not calling the proposed witnesses or at least providing their affidavits. For the reasons that follow, we disagree and affirm.

¶ 3                                    I. BACKGROUND

¶ 4     At a preliminary hearing, Deputy Josh Wattles of the Fayette County Sheriff's Department testified that he discovered a plastic bag containing 60 grams of presumed cocaine from a vehicle that defendant was driving. At the bench trial, with Judge M. Don Sheafor presiding, the evidence showed that, in the early morning hours of June 2, 2015, defendant was driving a borrowed car home to Centralia after spending the day visiting his son in Decatur. After about an hour, at approximately 3 a.m., two police officers, responding to a third-party call, arrived to assist defendant. Defendant told them that he swerved to avoid a deer and ended up in a ditch. They directed him back onto the roadway via a field entrance. Because defendant was on parole, Deputy Wattles asked him for permission to search the car. Defendant agreed without hesitation, telling the officers that he had nothing to hide.

¶ 5     Upon searching the vehicle, Deputy Wattles found a clear plastic bag with white powder. The bag was in the back seat behind an armrest that could be folded down. Deputy Wattles field-tested the substance, which tested positive for cocaine. Defendant denied knowing that the cocaine was in the car. A registration search showed that the vehicle was registered to Inez Calcutt.

¶ 6     A child's car seat was directly in front of the armrest console so that a child sitting in the car seat would have had his back pressing against the armrest. According to Deputy Wattles, defendant said that his son had been in the car at some point.

¶ 7    Trial counsel stipulated to the chain of custody for the baggie of cocaine and to the photographs of the car's interior where the baggie had been located behind the armrest. Both officers testified that, when they arrived at the scene, the lights on defendant's car were off and he was sitting alone in the dark vehicle. Julia Edwards, of the Illinois State Police crime laboratory, testified that her report showed that the substance she tested weighed 23.5 grams.

¶ 8    The trial court found defendant guilty of possession of a controlled substance. In so doing, the court did not credit defendant's explanation that he swerved to miss a deer because "if that were true, he would not be sitting in the car with all the lights off, including the headlights, flashers or other lights." The court found that "[i]t appears from this evidence the Defendant did not want to be seen." The trial court took judicial notice that "it takes approximately one hour to drive from Decatur, Illinois, to Vandalia, Illinois, which leads to the inference that the Defendant left Decatur at 2 a.m. after visiting with his child. It is hard to believe the Defendant left Decatur at 2 a.m. after visiting with his child. His explanation to the police where he was and what he was doing is not believable." The court further noted Deputy Wattles' testimony that the armrest where the cocaine was found was partially pulled down and could not be closed because of the drugs and that defendant said that his son was in the car at some point.

¶ 9    Defendant filed a *pro se* motion for a new trial alleging, *inter alia*, that his attorney "misrepresent[ed]" him. The court appointed new counsel who filed an amended motion raising several claims. As relevant here, the motion argued that the court erred by admitting the cocaine into evidence, given the discrepancy in weight between the amount Deputy Wattles testified to at the preliminary hearing and the amount Edwards tested. Defendant further argued that trial counsel was ineffective for stipulating to the admission of the cocaine into evidence. The court denied the motion, finding that these were strategic decisions.

¶ 10    The court sentenced defendant to six years in prison. On direct appeal, this court rejected defendant's contention that the evidence was insufficient to prove his guilt beyond a reasonable doubt. *Currie*, 2019 IL App (5th) 170038-U, ¶ 11. However, we held that the court erred by not conducting a *Krankel* hearing on defendant's allegations of ineffective assistance of counsel. We remanded for the court to conduct such a hearing. *Id.* ¶ 15.

¶ 11    Following remand, the trial court appointed *Krankel* counsel. At what the court characterized as a "pre-*Krankel* hearing," defendant explained his ineffective assistance allegations. He asserted that trial counsel was ineffective, first, for failing to call his son's mother, Danielle Hutchison, and grandmother, Tara Rollins, who would have testified that defendant did not own a car and had to borrow one to drive to Decatur on the day of his arrest. They would also have said that defendant's son was never in the car, which could have been corroborated by text messages from defendant's phone.

¶ 12    Defendant also claimed that trial counsel was ineffective for failing to call Justin Cole, who reported to the police that a vehicle was in a ditch. Cole could have testified that defendant was "trying to flag down help" after the accident.

¶ 13    Defendant also asserted that trial counsel should have admitted defendant's interrogation video, which would have shown him telling Deputy Wattles that he was the only one in the car and that his son was never in it. Defendant argued that trial counsel failed to file a motion to suppress the cocaine even though "more than half of the evidence was missing." Defendant acknowledged that trial counsel stipulated to the chain of custody but argued that he did not know what the term "stipulate" meant when trial counsel discussed it with him before trial.

¶ 14    Defendant also argued that trial counsel should have moved to have the photo evidence suppressed, because it conflicted with Deputy Wattles' testimony at the preliminary hearing that

4

the inside of the vehicle was neat and orderly. Finally, defendant argued that trial counsel failed to impeach Deputy Wattles.

¶ 15     Throughout the interchange with defendant, the court observed that virtually all of defendant's allegations related to trial strategy. Moreover, much of the proposed new evidence was cumulative of evidence adduced at the trial. Nevertheless, as the judge was not the one who had presided at trial and *Krankel* counsel had already been appointed, the court scheduled a full *Krankel* hearing.

¶ 16     At that hearing, held before Judge Allan F. Lolie Jr., defendant testified consistently with his contentions at the preliminary *Krankel* hearing. He said that Rollins would have testified that she asked him to come to Decatur for an issue involving his son. She would have said that defendant told her he did not have a car and would have to borrow one. Hutchison would have testified that defendant came to Decatur because his son was being abused by his stepfather.

¶ 17     Another potential witness, JeVon Williams, would have testified that, after defendant drove into the ditch, he called him for help. Williams arrived at about the same time as the police. Cole would have said that defendant had his flashers on and was trying to flag down help. Trial counsel did not contact any of these witnesses, nor did he attempt to obtain receipts from the towing company or defendant's cell phone records. Nor did he file a motion to suppress the cocaine. He stipulated to the chain of custody of the cocaine, despite the large discrepancy between the weight that Deputy Wattles testified to and the amount tested by the crime lab. Defendant acknowledged that trial counsel attempted to contact Cole before trial but was unable to locate him.

¶ 18     Trial counsel testified that he discussed with defendant before trial what he believed the main issue was and defendant "implicitly agreed" with his proposed defense. Trial counsel believed that the key issue was whether the State could prove defendant's knowledge of the drugs

5

in the vehicle. Defendant did not mention wanting to call any witnesses until, during the State's case, he said, "Hey, I want to call certain people." Trial counsel did not believe that a motion to suppress was warranted because defendant had consented to a search of the car. He did not contact Cole because "it was obvious there was an accident" and his testimony would not be "important to the case at all." Trial counsel was aware before trial of the discrepancy in the weight of the drugs and was "happy about it." He explained: "I felt very strongly, particularly at a bench trial, a lesser amount, given what I felt like was, at best, a circumstantial case, there was a bigger likelihood that my client would be found not guilty."

¶ 19 In closing, *Krankel* counsel argued that testimony from the proposed witnesses would have been important, because Judge Sheafor commented adversely on defendant's credibility, particularly his stated reason for going to Decatur. The court also commented on the fact that defendant did not have any lights on in the car or attempt to get help after he went into the ditch. *Krankel* counsel argued that the proposed witnesses would have bolstered defendant's credibility on these issues. The State responded that trial counsel's decisions represented a reasonable trial strategy. The court took the matter under advisement.

¶ 20 The court later issued a written order in which it found that calling defendant's proposed witnesses would not have affected the outcome of the case, writing:

"It was undisputed at trial that the Defendant traveled to Decatur to see his child. The fact that the Defendant called Mr. Williams to come get him does not address the issue of cocaine possession. Both can be true. A person can travel to Decatur to see his child and can also possess cocaine. One fact does not make the other less plausible. The court cannot find that Judge Sheafor's ruling would have varied had he heard any of that evidence.

If there would have been evidence that the Defendant tried to call a tow company, how would that have made his cocaine possession any less likely? Assuming [trial counsel] knew of the alleged attempt to contact a tow driver, not showing proof of those records did not violate the *Strickland* standards.

The court does not quite understand why [trial counsel] chose not to inquire as to the discrepancy regarding the cocaine's weight. Having said that, the sole issue was knowing possession. [Trial counsel's] strategy was that the Defendant did not knowingly possess the cocaine and his defense to that lack of knowledge was all presented in the State's case in chief."

¶ 21    Defendant timely appeals.

¶ 22                                    II. ANALYSIS

¶ 23    On appeal, defendant contends that *Krankel* counsel was ineffective. He argues that, although many of his claims of ineffective assistance of trial counsel revolved around counsel's failure to interview and call various witnesses, *Krankel* counsel never called those witnesses at the hearing. Thus, according to defendant, the court was unable to evaluate properly the impact of their proposed testimony. He further contends that *Krankel* counsel did not provide evidentiary support for his additional claims regarding his cell phone records and the failure to challenge the admission of the cocaine into evidence. For the reasons that follow, we disagree and affirm.

¶ 24    Generally, a claim of ineffective assistance of counsel is considered under the familiar *Strickland* standard. *People v. Cherry*, 2016 IL 118728, ¶ 24 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under that test, to prevail on an ineffective-assistance claim, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the

7

proceeding would have been different. *Id.* The defendant must satisfy both elements of the *Strickland* standard to prevail on his or her claim. *Id.*

¶ 25 A *Krankel* hearing is a critical stage of proceedings to which the right to constitutionally effective counsel applies. *People v. Downs*, 2017 IL App (2d) 121156-C, ¶ 41, *rev'd on other grounds*, 2015 IL 117934, ¶ 36. Thus, the conduct of *Krankel* counsel is judged by the *Strickland* standard. *Id.*

¶ 26 A *Krankel* inquiry typically proceeds in two stages. *Id.* ¶ 43. At the first stage, the trial court examines the factual bases of the defendant's *pro se* claims. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). If, in this preliminary inquiry, the court finds that the claims lack merit or pertain only to matters of trial strategy, it may deny the defendant's motion without appointing new counsel. *Id.* at 78. If, however, the court finds possible neglect by counsel, the court should appoint the defendant new counsel. *Id.* Following the appointment of new counsel (*i.e.*, *Krankel* counsel), the matter proceeds to the second stage, which consists of an evidentiary hearing on the defendant's claims. *Id.*

¶ 27 The standard of review following a *Krankel* hearing depends on whether the court decided the merits of the defendant's claims. *People v. Jackson*, 2020 IL 124112, ¶ 98. We review *de novo* the legal question whether the court properly conducted the preliminary *Krankel* inquiry. *Id.* Where the court properly conducted the inquiry, we will reverse only if its decision on the merits of the defendant's *Krankel* motion was manifestly erroneous. *Id.* "Manifest error is error that is clearly evident, plain, and indisputable." *Id.*

¶ 28 We agree with the State that it is not reasonably probable that the result of the *Krankel* hearing would have been different had defendant's proposed witnesses personally testified. The court was aware of their expected testimony. Nonetheless, the court concluded that trial counsel

8

made a strategic decision not to call them and that the strategy was reasonable given that their testimony—which related only to collateral issues—would not have changed the outcome of the trial.

¶ 29     The court pointed out at some length that testimony about whether defendant visited his son while in Decatur, whether his flashers were on at some point after the accident, and whether he called for help, would not have made it any more or less likely that he constructively possessed the cocaine in the back seat. Thus, it was not ineffective for trial counsel to omit this evidence and focus on the key issue of defendant's lack of knowledge. There is no reasonable likelihood that having the proposed witnesses testify in person or submit affidavits would have altered this conclusion.

¶ 30     Defendant argues, however, that Judge Sheafor specifically mentioned several of these issues in commenting unfavorably on defendant's credibility. He contends that his proposed witnesses would have addressed these issues. Our evaluation of counsel's conduct must "be highly deferential to trial counsel on matters of trial strategy, making every effort to evaluate counsel's performance from his perspective at the time, rather than through the lens of hindsight." *People v. Perry*, 224 Ill. 2d 312, 344 (2007). Defendant views the proposed testimony through the lens of hindsight. Moreover, the court was aware of Judge Sheafor's ruling but still concluded that the witnesses' testimony would not have changed the result of the trial—a ruling defendant does not directly challenge.

¶ 31     In his standard of review section, defendant argues that we should essentially disregard the trial court's findings and review its decision *de novo* because *Krankel* counsel "did not comply with *Krankel* procedure." We are aware of no case or rule imposing rigid procedural requirements for *Krankel* hearings. The only case defendant cites in support of this proposition, *People v. Kyles*,

9

2024 IL App (4th) 230128-U, is distinguishable. There, *Krankel* counsel pleaded only a conclusional allegation that trial counsel labored under a conflict of interest. *Krankel* counsel did not specify whether the conflict was actual or *per se* and did not allege any facts in support. *Id.* ¶¶ 40-42. The reviewing court thus held that the trial court was unable to consider the claim at all. *Id.* ¶ 48.

¶ 32    Similarly, in *Downs*, new counsel did not include any of the defendant's claims in an amended motion. The court held that counsel had a duty "to present the nonfrivolous claim with whatever support he could muster at the second-stage *Krankel* hearing." *People v. Downs*, 2017 IL App (2d) 121156-C, ¶ 56. Here, by contrast, counsel properly pleaded defendant's ineffective assistance allegations and supported them with evidence in the form of defendant's testimony.

¶ 33    Defendant attempts to liken a *Krankel* hearing to a postconviction proceeding, which is governed by Rule 651. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Generally, a postconviction claim that trial counsel was ineffective for failing to call certain witnesses must be accompanied by affidavits from the proposed witnesses as "without affidavits, a reviewing court cannot determine whether these witnesses could have provided any information or testimony favorable to defendant." *People v. Guest*, 166 Ill. 2d 381, 402 (1995). Although a defendant has no constitutional right to the effective assistance of counsel in a postconviction proceeding, he or she has the right to reasonably effective counsel. *People v. Peoples*, 346 Ill. App. 3d 258, 261 (2004). Counsel may provide unreasonable assistance by, *e.g.*, failing to provide evidentiary support for a postconviction claim. *People v. Turner*, 187 Ill. 2d 406, 414 (1999). Defendant contends that *Krankel* counsel failed to do so here

¶ 34    The State responds that Rule 651 does not govern *Krankel* hearings, because the purposes of these proceedings are distinct. The State further observes that, even in the postconviction

context, affidavits from proposed witnesses are not required where the court can glean the substance of their testimony from other sources in the record. *People v. Dupree*, 2018 IL 122307, ¶¶ 40-42; see 725 ILCS 5/122-2 (West 2024) (postconviction claims may be supported by "affidavits, records, or other evidence"). Here, the trial court knew the substance of the proposed witness testimony from another source, namely defendant's testimony.

¶ 35    Defendant further contends that the trial court could not properly consider defendant's version of the witnesses' proposed testimony because it was hearsay. The State responds that the rules of evidence do not apply in "miscellaneous proceedings." Ill. R. Evid. 1101(b)(3) (eff. Sept. 17, 2019). The State further notes that the prosecutor here did not object to defendant's testimony on hearsay grounds and the trial court clearly considered it.

¶ 36    Initially, the testimony was not hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). The purpose of a *Krankel* proceeding is to "facilitate the trial court's full consideration of a defendant's *pro se* claim and thereby potentially limit issues on appeal" (*People v. Ayres*, 2017 IL 120071, ¶ 13), not to ascertain the truth of any additional evidence the defendant claims should have been presented. In this case, the testimony was not offered to prove the truth of the matters asserted, *i.e.*, whether defendant visited his son in Decatur, called for help after the accident, or had his flashers on at some point. Thus, it was not hearsay.

¶ 37    In any event, as the State points out, the prosecutor did not object to defendant's testimony on hearsay grounds. The trial court did not disregard it on that basis either. Its order assumes that the witnesses would have testified as defendant wanted but found that, because the testimony related only to collateral issues, it would not likely have changed the result of the trial. Defendant

does not explain how the court's decision would have been different had it heard the same information from the witnesses themselves.

¶ 38     Defendant further contends that *Krankel* counsel did not introduce evidence to support his claims that trial counsel should have introduced his phone records and text messages, which would have shown that he sought help after the accident. As noted above, the trial court was aware of the substance of the proposed evidence and found that it was reasonable trial strategy not to introduce it. Presenting the actual documents would not likely have changed this conclusion.

¶ 39     Defendant also argues that *Krankel* counsel did not support his claim that trial counsel was ineffective for not moving to suppress the cocaine and stipulating to the chain of custody. However, defendant does not suggest that any additional evidence *could* have been presented on these issues. Defendant's claims in this regard are based solely on the weight discrepancy. He does not suggest that evidence existed that the laboratory tested the wrong sample or that someone tampered with the evidence. In the postconviction context, which defendant insists is analogous to a *Krankel* hearing, unless the record contains affirmative evidence otherwise, we "reasonably presume that postconviction counsel made a concerted effort to obtain evidence in support of postconviction claims, but was unsuccessful." *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 27.

¶ 40     In any event, trial counsel testified at the hearing that his trial strategy was to focus on the issue of defendant's knowledge. Where a defendant denies knowledge or possession of drugs, focusing on perceived flaws in the chain of custody or testing can undermine that defense. *People v. Hunter*, 376 Ill. App. 3d 639, 644 (2007) (where defendant's theory at trial was that he never possessed the controlled substances, there was no reason to address the characteristics of the controlled substances and to do so would have been inconsistent with the defense strategy).

¶ 41     In an attempt to show prejudice, defendant contends that

12

"*Krankel* counsel relied only on [defendant]'s testimony, which was contradicted by trial counsel's testimony denying [defendant] told him about the witnesses until the middle of trial to establish trial counsel was ineffective. *** Ultimately, the trial court rejected each claim, finding that counsel's testimony was more credible regarding [defendant]'s claims challenging the cocaine evidence and calling witnesses to testify in his defense at trial."

¶ 42 Our review of the record demonstrates that it is unlikely that the proposed witnesses could have testified from personal knowledge about when defendant informed trial counsel about them. Moreover, as noted, the court's findings were not based on credibility. The court assumed that the witnesses would have testified the way defendant described. It found that it was a reasonable strategy not to call them given that their testimony related only to collateral issues and thus would not have changed the result of the trial.

¶ 43 Decisions concerning which witnesses to call and what evidence to present on a defendant's behalf are matters of trial strategy that rest with counsel. *People v. Munson*, 206 Ill. 2d 104, 139-40 (2002). In *Downs* and *Kyles*, on which defendant heavily relies, *Krankel* counsel essentially failed to raise the issues at all. *Downs*, 2017 IL App (2d) 121156-C, ¶ 56; *Kyles*, 2024 IL App (4th) 230128-U, ¶ 43. Here, counsel raised the issues defendant wanted to raise, supported them with his own testimony, and vigorously argued them. Nothing in the record suggests that the court's decision would have been different had the witnesses testified personally or had the court actually seen defendant's cell phone records.

¶ 44                                III. CONCLUSION

¶ 45 For the foregoing reasons, we affirm the judgment of the circuit court of Fayette County.

¶ 46 Affirmed.